OPINION
Plaintiff-appellant Castle Properties appeals the decision of the Mahoning County Common Pleas Court which granted summary judgment to defendant-appellee Lowe's Home Centers, Inc. For the following reasons, the judgment of the trial, court is affirmed.
 STATEMENT OF FACTS
Castle owns a nine hundred foot deep parcel of real estate located along Route 224 in Boardman. The front five hundred feet are zoned for commercial use. The back four hundred feet are zoned for residential use only and are adjacent to a developed residential neighborhood. In 1993, Lowers agreed to purchase the property from Castle on the condition that the parcel be rezoned in a manner satisfactory for Lowe's intended use. Under the terms of the agreement, Castle agreed to exercise its "best efforts" to meet the condition.
Following unsuccessful efforts on the part of Castle to rezone the land, the parties entered into a new agreement in August 1994. The new agreement provided for the sale of the parcel under the following terns. Castle was to transfer the land to Lowe's immediately in return for $825,000. If Lowe's was able to successfully rezone the parcel and obtain government approval to use the land for Lowe's intended use, then $3,775,000 more would be transferred to Castle for a total purchase price of $4,600,000. However, if Lowe's was unable to obtain rezoning and government approval within the time specified, then Castle was obligated to repurchase the parcel for $825,000.
Specifically, the agreement, which was drafted by Lowe's, provides that Lowe's must only complete the purchase if:
 "[Lowe's] is able to accomplish both of the following events by January 15, 1996:
 (a) Rezoning of the Premises which allows [Lowe's] to use the Premises as a Lowe's home improvement retail warehouse, as such retail warehouses are currently operating in the state of Ohio, substantially in the form attached as Exhibit D[1]
(the `Intended Use').
 (b) Obtaining the approval of the proper municipal authorities of the site plan showing the Intended Use.
 [Lowe's] shall use all commercially reasonable efforts to accomplish these events within the time frame permitted." (Emphasis added).
On August 9, 1995, Lowe's filed a zoning petition which sought to rezone the back four hundred feet of the property from residential to commercial. Hearings were held before the Mahoning County Planning Commission and the Boardman Zoning Commission on September 12, 1995 and before the Boardman Township Trustees on October 2, 1995. All three bodies denied Lowe's application. Thus, on October 31, 1995, Lowe's notified Castle that it was invoking the repurchase clause in the agreement. Castle repurchased the land from Lowe's in April 1996. Subsequently, Lowe's constructed a warehouse on South Avenue in Boardman.
On February 21, 1997, Castle filed a breach of contract suit against Lowe's. The complaint alleged that Lowe's had breached the parties' 1994 agreement by failing to use "all commercially reasonable efforts" to obtain the necessary zoning as required by the terms of the agreement and that Lowe's had acted in bad faith since a warehouse could have been constructed on the site without any zoning changes. Thereafter, Lowe's filed a motion for summary judgment which the trial court granted on September 9, 1998. In doing so, the trial court stated:
 "A contract contingent upon the obtainment of certain results and imposing a duty on a party to use all commercially reasonable efforts to obtain those results does not require that the party do everything possible. [Ne]ither does it require that the party's efforts be wholly beyond criticism.
 Rather, the requirement of `reasonable efforts' must be considered met where one spends substantial sums, hires competent persons to assist, and demonstrates a commitment to obtaining the desired outcome."
 ASSIGNMENT OF ERROR ANALYSIS
Castle's sole assignment of error alleges that the trial court should not have granted summary judgment to Lowe's because there remained genuine issues of material fact regarding whether Lowe's used "all commercially reasonable efforts" to rezone the property. We review the trial court's grant of summary judgmentde novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue of material fact remains to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears that reasonable minds can only come to a conclusion that is adverse to the nonmovant. WelcoIndus., Inc. v. Allied Cos. (1993), 67 Ohio St.3d 344, 346. A trial court should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Id. Nevertheless, summary judgment is appropriate where the nonmovant fails to produce evidence demonstrating that a genuine issue of material fact exists. Id.
The movant has the initial burden of informing the trial court of the basis for its summary judgment motion by identifying the portions of the record that demonstrate the absence of a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The burden then shifts to the nonmovant to set forth specific facts showing that there is a genuine issue for trial in that reasonable minds could reach different conclusions. Id. To meet these burdens the parties must point to the proper supporting evidence. This evidence consists of pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Civ.R. 56(C).
Castle argues that it met its burden of establishing that there existed genuine issues of material fact. Initially, Castle professes that the phrase "all commercially reasonable efforts" is ambiguous and therefore should have been left for determination by a jury. However, the construction of written contracts is a matter of law. Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 313. Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language. Lelux v. Chernick (1997), 119 Ohio App.3d 6,10. "The fact that contractual language may, on occasion, pose difficult factual applications does not make that language ambiguous." Santana v. Auto Owners Ins. Co. (1993),91 Ohio App.3d 490, 494. Common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument. Alexander v. Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241,245.
Although no Ohio court has previously defined the phrase "all commercially reasonable efforts," it does not follow that the phrase itself is ambiguous. The phrase has ordinary meaning which is not contradicted by the terms of the agreement and which does not result in absurdity. It appears that the language used is capable of only one reasonable construction, that Lowe's was required to make every effort to obtain the required zoning that a reasonable business entity would have made under similar circumstances.
Having concluded that the phrase in question is not ambiguous, we must determine whether there remained any genuine issues of material fact relating to whether or not Lowe's used "all commercially reasonable efforts" to obtain rezoning for the parcel of land. As the movant, Lowe's meets its initial burden by pointing out the various efforts expended to rezone the property. For instance, Lowe's hired local attorney Daniel Daniluk to handle the attempted rezoning. Deposition testimony established that Daniluk came highly recommended and was experienced in the field of zoning law. Lowe's paid Daniluk almost $9,000 for his services.
In addition, Lowe's paid a South Carolina graphic design firm close to $10,000 for the preparation of poster-size color demonstrative aids that were used in presentations to the community and to the various zoning authorities. A traffic study was funded by Lowe's which cost $12,000, and an environmental assessment cost Lowe's almost $14,000. There is evidence of other expenditures as well.
Lowe's representatives met several times with members of the Boardman and Mahoning County zoning bodies, which officials advised Lowe's that the rezoning effort would require significant public support. In order to gain this public support, Lowe's distributed letters to the neighborhood adjacent to the parcel explaining its intended use for the parcel, displaying computer-generated photographs of the proposal and inviting the residents to a meeting to discuss the matter. The meeting took place in January 1995. Two Lowe's representatives flew in from North Carolina. According to Daniluk, one of the participants read a prepared statement that in substance said, "go to hell, we're not talking to you, we oppose you 100 percent and you will never build on that location," at which point the residents got up in mass and walked out.
In an effort to address the concerns of both residents and zoning officials alike, Lowe's promised to leave a 100 foot strip of trees intact as a buffer zone between the proposed store and the neighborhood. Another fifty foot area would be disturbed during construction but then replanted with evergreens. Lowe's planned to build a six foot high wooden fence between the buffer zone and the store. Lowe's made plans to relocate the storm water retention pool to appease residents' concerns about drainage. Lowe's also attempted to procure the support of the DeBartolo Corporation for the zoning effort, but that company refused to become involved as it believed that the rezoning effort would not be successful.
In support of its contention that there remained various disputed factual issues before the trial court, Castle points out the alleged deficiencies in Lowe's efforts to rezone. For instance, Castle notes that although the agreement was entered into in August 1994 and set a deadline of January 15, 1996 for the rezoning to be completed, Lowe's did not file its application for rezoning until August 9, 1995. However, Lowe's spent the year between the signing of the agreement and its filing of the application engaged in efforts to gain public and political support by working with the community. As aforementioned, Lowe's was also seeking help from DeBartolo. Furthermore, Lowe's own attorney wanted to put off the zoning request until a later date due to the public opposition. Daniluk testified that when he suggested waiting, Lowe's urged him to file. This urging was presumably due to the fact that they needed to attempt rezoning prior to January 1996 as part of their obligation under the agreement with Castle.
Additionally, Castle claims that Lowe's failure to appeal to the trial court indicates a failure to use all commercially reasonable efforts. However, Castle does not support this statement with the requisite evidence. Castle does not suggest the assignments that could be raised on appeal or the likelihood of success on appeal. Three boards rejected the rezoning petition. Daniluk informed Lowe's that there was little or no likelihood of success on appeal. If success is this unlikely, then appealing is not commercially reasonably, particularly when Castle can propose no reason as to why a trial court would overturn the prior decisions.
Castle also claims that there remained a factual dispute as to whether Lowe's had been negotiating for the South Avenue site prior to denial of the zoning application. Specifically, Castle refers to a letter dated January 8, 1996 from Developers Diversified to Lowe's. Lowe's admits that it was approached by many developers about alternative sites. However, Lowe's asserts that negotiations for the South Avenue site did not occur until after the zoning authorities had rejected Lowe's application. Regardless, discussing potential alternative sites is not inconsistent with a duty to exert "all commercially reasonable efforts." It is merely a realistic decision to have a back-up plan should the favored plan fail, especially where many indicators pointed towards failure.
In support of its position, Castle notes that Lowe's failed to inform Daniluk of the terms of the purchase agreement or of the January 15, 1996 deadline until September 1995. Lowe's concedes this fact, but argues that it was immaterial to the case as there was no evidence suggesting that Daniluk's lack of awareness concerning the terms of the agreement in any way affected Lowe's commitment to the rezoning. We agree. Daniluk was the zoning attorney, not the contract attorney. It was implicit when Lowe's hired Daniluk and that, as Lowe's attorney, he would perform to the best of his abilities in preparing and presenting the case. Deposition testimony established that Lowe's urged Daniluk to file the rezoning petition earlier than he would have preferred. We shall not presume that Daniluk did not give it his all merely because he was unaware that Lowe's was required to use all commercially reasonable efforts to rezone the property. As such, it was not relevant that Lowe's did not advise Daniluk of the specific terms of the agreement with Castle.
Castle next contends that Lowe's should have withdrew its zoning petition during the hearing before the zoning commission and refiled an amended petition seeking to rezone less than the entire four hundred feet of the residential property. Castle points to the transcript of the hearing where a board member asked Daniluk why Lowe's was seeking to rezone the entire four hundred feet if it intended to keep one hundred feet of trees intact and replant another fifty feet. Daniluk responded to the board that Lowe's did not want to run afoul of setback laws. He then stated that Lowe's was willing to place a permanent restrictive covenant on the buffer zones to whatever agency the board found appropriate.
There is nothing inadequate about Daniluk's response. Such a proposal would maintain the character of the neighborhood. If the intended buffer zone remained residential because Lowe's did not seek rezoning for it, then Lowe's could sell that land to developers who could remove the trees and build homes, resulting in the Lowe's building being clearly visible from the existing development. Thus, there is nothing unreasonable with Daniluk's response that Lowe's was willing to enter into a restrictive covenant to protect the land rather than refile an amended petition seeking to rezone only two hundred fifty feet.[2]
Furthermore, Daniluk informed the board that Lowe's was willing to increase the height of the six foot wooden fence to eight or ten feet if the board so ordered.
Castle's last argument is that Lowe's could have turned its store sideways or erected a smaller store to avoid the rezoning issue. However, the parties' agreement stated that Lowe's was only obligated to purchase the land if rezoning occurred that allowed Lowe's to build a store resembling the prototype store in the attached exhibit. Thus, Lowe's was not obligated to turn the store sideways or decrease the store's square footage to something other than the prototype store.
Lowe's spent substantial sums, hired competent people to assist in its efforts and demonstrated a high degree of commitment to obtaining the desired outcome. Depositions established that Lowe's had never before expended so much money in a rezoning effort. Daniluk opined that Lowe's did everything commercially reasonable. The record is replete with evidence that Lowe's did indeed make commercially reasonable efforts to obtain the required rezoning.
In its opposition to summary judgment, Castle submitted a letter written by an "expert" it consulted which pointed out ways that Lowe's did not use all commercially reasonable efforts. However, a letter is not an affidavit or any other type of evidence that is admissible in ruling on a motion for summary judgment pursuant to Civ.R. 56(C) and (E). Furthermore, the criticisms set forth in the letter that are argued by Castle on appeal were addressed supra.
Most importantly, the agreement between the parties does not require that Lowe's use every possible strategy to attempt rezoning. The word "all" is limited by the words "commercially reasonable." As previously outlined by this court, Castle failed to rebut Lowe's assertions that it used "all commercially reasonable efforts" to rezone. Hence, Castle failed to meet its burden as imposed by Dresher, making summary judgment available as a matter of law. Castle's assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
JUDGMENT: Affirmed.
Cox, P.J., concurs.
Donofrio, J., dissents; see dissenting opinion.
APPROVED:
 __________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Exhibit D is the site plan for Lowe's prototype retail warehouse of approximately 125,000 square feet.
[2] Moreover, Castle had filed petitions in the past and withdrew them at the last minute for fear of defeat. That strategy did not work when Castle was obligated to use its best efforts to rezone. Thus, when Lowe's took over the effort to rezone, there is no reason it should be expected to inflame the community more than Castle already had by repeated withdrawals.